Granger, C. J.
Section 20 Revised Statutes reads thus :
“ The state, county commissioners, township trustees, *713 boards or officers of municipal corporations, and the boards of directors, trustees or other officers of any of the benevolent, educational, penal or reformatory institutions wholly or in part under the control of the state and any of said municipalities or institutions, shall be capable of receiving by gift, devise, or bequest, moneys, lands, or other property, for their benefit, or the benefit of any of those under their charge, and to hold and apply the same according to the terms and conditions of the gift, devise or bequest; but this section shall not be held to affect or change the statutory provisions as to devises or bequests for such purposes.”
It seems to us that the words “ commissioners of the ” wei'e intended to precede the word “ Ashtabula ” in the second line of the fifth clause of the will. The subsequent words “to be under the full control of said commissioners” indicate that the writer supposed that they had previously been named or referred to. Be that as it may, the fair construction of the clause as a whole, makes it a devise and bequest to the count}* commissioners for the county. See Welch, J. in Carder v. Commissioners, 16 Ohio St., 369. Could they take, hold and administer?
Section 20, quoted above, took the place of section one of the act of February 11, 1869, (66 Ohio Laws, 8), section 20 of the act of March 1, 1877 (74 Ohio Laws, 38), and section one of the act of March 7, 1878 (75 Ohio Laws, 42). The last named act related to trustees of any of the benevolent, educational, penal and reformatory institutions of the state and authorized them to take “ for the benefit of any of such institutions, or of any of the inmates of the same.” The revisers evidently intended a section, sufficiently comprehensive to furnish a representative for the people of the state in each of their subdivisions, as well as in their aggregate, capable of taking, holding and administering any property that any testator might choose to devise or bequeath for the benefit of that aggregate, or of any of its recognized parts, to be used for any purpose recognized by the statutes controlling the beneficiary. Primarily the subdivisions are counties and townships; secondarily cities, *714 villages and hamlets ; thirdly, collections of individuals segregated from home-dwelling people by physical or mental defect or infirmity, or by affliction, poverty or crime. The'se last inhabit what are referred to as “institutions.” In every case the actual beneficiaries are the people, or some definite portion of them recognized as such by legislation. The only designated representative of that part of the people of the state which inhabits and constitutes a county, is the board of county commissioners. That board has no “charge” of persons. It has charge of certain county property and manages such business of the county (that is, of that fragment of the state population which dwells within the county lines) — as has been committed to it by statute. The persons, whose interests are under the charge of these commissioners are the people of the count}'-. But while the boards controlling the “institutions” before referred to, have in charge the iudividuals, who are inmates, the board of county commissioners does not represent the several interests of the persons who inhabit the county. It does represent many property interests of those persons as an aggregate. As an aggregate those people, — in a corporate capacity, — own buildings such as court house, jail etc., and the ground under and appurtenant thereto; roads of divers kinds; bridges; stocks in certain corporations; moneys raised by taxation etc. These are named as examples; not as an attempted enumeration of all.
Section 3956 directs the auditor of state to apportion the state common school fund to the several counties, of the state semi-annually. Thus the county as a county, owns the portion so assigned to it. As it is payable to the treasurer ; apportioned to the townships by the county auditor, and paid out under direction of the several boards of education within the county, no part of this fund is directly controlled by the commissioners. But it is their duty, each September to count all the funds in the treasury, examine and compare books and vouchers, and remove a treasurer who has embezzled any of the funds. .Moreover they are expressly required, when called upon, (see 3969) to so far’ *715 examine into the action of the several boards of education as to see whether or not, they provide funds enough to give to all the youth of school age in each district sufficient school privilege ; that in each district a scho.ol shall be continued for at least six months in the year, or that each school shall have an equitable share of school advantages as required by the statutes relating thereto; and if any school board fails to so provide, the commissioners make the needed levy. Under section 401Q, they must, under the circumstances therein named, provide the necessary school room or rooms, furniture, apparatus and books for the school in any infirmary, children’s home or orphan-asylum belonging to the county.
It seems to us that the county, in its corporate capacity, is,the owner of the money that supports the schools within the county. Its auditor divides that money amongst the townships before it is expended, but that fact does not affect the county ownership of the fund so long as it remains in the county treasury. This ownership is in trust for the county school system, as regulated by statute. By its legislation the state has made the county the trustee and custodian of the school fund for all the schools within the county lines, while the people of each school district manage its school through a board chosen by themselves. This board calls upon the county for the share of the money in its charge, which that portion of its people have a right to expend. Moreover, the county maintains and furnishes the school in its infirmary, its children’s home, and its orphan asylum. So, as already stated, we think that section 20 intended to create a representative of the people of the county — capable of taking, holding and administering money, or property, that could, under the terms of the will, be used for any purpose for which said quasi-corporation aggregate might lawfully hold, or expend money. Section 8964 seems to contemplate the possible presence in the county treasury of money for schools, other than the county’s share of the moneys apportioned by the state auditor, or raised by taxation. After providing for these last named moneys, it concludes with a provision that “ all *716 ether money in the county treasury for the support of common schools * * * shall be apportioned annually in the same manner as the state common school fund.”
If then, this so-called corporation aggregate, the county, may hold and expend any funds for schools within its territory, its designated representative may take and hold any devise or bequest therefor unless the will requires its expenditure in an unlawful manner, or for an unlawful purpose.
This will designates the purposes as “ educational,” and prescribes, as the manner, to use and expend as seems best in their judgment to promote and advance the cause of education in said county.” The purpose is the identical one for which our school tax is collected. No word in the will requires an unlawful act. The commissioners can pay into the county school fund so much as they deem best. The auditor will apportion this under section 3964. They may apply part of it to furnish the room, furniture, apparatus and. books under section 4010. If they find that any board of education has failed to provide the funds required by section 3969, they may use part of it instead of making a levy.
It is urged that the clause does not sufficiently define its object; also, that unless the commissioners can legally exercise the wide discretion allowed by the terms of the will the actual intent of the testator cannot be carried out; that he would not have made the devise and bequest if he had supposed that the discretion of the commissioners would be limited to the sphere of their statutory powers.
These claims can best be considered together. The presumption must be that the testator knew the law. When he selected public officers, whose powers were granted by statute, to administer his bounty for a public purpose, in law he knew the limitations of their powers, although in fact he may have been ignorant of them. Whether actually ignorant of those limitations or not, the testator used well chosen words. They convey his consent that the commissioners may freely exercise their discretion. Hence no *717 matter how largely the legislature of the state may add to the power of county commissioners in educational matters, the terms of the will permit, the board to exercise those powers according to their discretion — “ as seems best in their judgment to promote and advance the cause of education in said county.”
In Carder v. The Commissioners, 16 Ohio St., 353, the devise was to the county of Fayette. No object was named. The court held it good; that the property could be used for any purpose for which a county could lawfully hold property. The will of James Christy is more definite. If a county can hold and distribute, or expend any funds for educational purposes within its own bounds, the case cited is in point, and supports the judgment of Ashtabula common pleas.
That a county, under the statutes in force in 1880, could so hold, distribute and expend some funds, we have already shown. While it may not. be material to show that such funds could be held, distributed or expended by the commissioners, section 4010 expressly directs such expenditure by them.
Unless under section 20 the commissioners can take and hold for every purpose for which a county can hold, own or expend, counties are left unrepresented in the subject matter of said section, as to important interests. It is true that each board of education is competent to take a devise or legacy for its schools, but that does not supply representation for the educational interests of the people of the county. If this will had named the school boards of Ashtabula county as devisees and legatees, infinite difficulty and embarrassment in administration would result. We cannot think that the legislative body intended that the testator’s bounty should either be given to the whole state, or limited to a school district. As we read it, county commissioners may take and hold title to anything that a county may hold or own, although in the actukl custody or expenditure the county must, under some statute, act by an officer, or officers, other than its commissioners.' Section 20 clothes that *718 board with power to take and hold, and transmit to the proper custody, the subject of the devise and legacy. In so far as the actual expenditure of the Christy residue must, under the statutes, be made by boards of education, such expenditure is within the county for educational purposes. The will in effect directs the commissioners to determine what schools, and in what sums, the residue shall be apportioned. Section 20 gives them power to receive from the executor. Other statutes make it their duty to place county money, that conies to their custody, in the treasury. Moneys so placed, designated as for expenditure in special school districts, the auditor must credit to those districts, and the proper school board is charged with the actual expenditure.
Under the terms of this will we think the legislature may add to the powers of the commissioners in educational matters, and the board can use such powers as far as the terms of the will permit.

The judgment of the common pleas is affirmed.

Nash, and Martin, JJ., dissented.